UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**LAKE CHARLES INSTRUMENTS INC**     **CASE NO. 2:21-CV-00893**

**VERSUS**     **JUDGE JAMES D. CAIN, JR.**

**SCOTTSDALE INSURANCE CO**     **MAGISTRATE JUDGE KAY**

### MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 19] filed by defendant Scottsdale Insurance Company and seeking a ruling capping plaintiff's contractual recovery for business income coverage at a maximum of $338,215.00. Plaintiff Lake Charles Instruments, Inc. ("LCI") opposes the motion. Doc. 27.

### I.
#### BACKGROUND

This suit arises from damage suffered by plaintiff during Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020, and Hurricane Delta, which struck the same area on October 9, 2020. LCI operates a business in Lake Charles, Louisiana. At all relevant times it was insured under a commercial property insurance policy issued by defendant Scottsdale Insurance Company ("Scottsdale"). *See* doc. 19, att. 4. The policy provides, *inter alia*, business income coverage of up to $500,000.00 subject to a monthly limit of 1/3. *Id.* at 63.

LCI made a claim on its policy after Hurricane Laura and first inquired on September 16, 2020, about the availability of business interruption ("BI") coverage. Doc.

19, att. 5, pp. 21, 24. Scottsdale responded that the claim for this coverage would be assigned to an adjuster and provided an address for LCI to submit documentation. *Id.* at 21. One week later Brandy Ungar, a forensic accountant with the firm J.S. Held, contacted LCI to request information on the BI claim. Doc. 9, att. 6, pp. 6–7. Scottsdale requested a status update from Ungar on October 1, 2020, and Ungar responded on October 5, 2020, that LCI had not yet provided any documents. Doc. 9, att. 5, pp. 15–16. One week later, Ungar contacted LCI again to request documentation. Doc. 9, att. 6, p. 5.

In response to LCI's request for an advance, Scottsdale made a payment of $50,000 on the BI claim on October 15, 2020. Doc. 9, att. 5, p. 14. With this payment, however, it reserved its rights to require full compliance under the policy including the submission of appropriate documentation. *Id.* Ungar again contacted LCI with a request for documentation on November 3, 2020. Doc. 9, att. 6, p. 4. On November 30, 2020, Scottsdale received a letter of representation from plaintiff's counsel with demand for policy limits. Doc. 9, att. 8. However, Ungar received no documentation on the BI claim and her requests for same sent in December 2020, February 2021, and March 2021 likewise went unanswered. Doc. 9, att. 6, pp. 1–4.

Plaintiff's counsel filed suit against Scottsdale in this court on April 5, 2021, raising claims of breach of insurance contract and bad faith. Doc. 1. Pursuant to the court's Case Management Order ("CMO") [doc. 4] for first-party insurance claims arising from Hurricanes Laura and Delta, the parties exchanged initial disclosures on July 12, 2021. Doc. 19, att. 9. LCI did not provide any documentation in support of its BI claim there, instead providing an itemized list of building and contents damage and stating that "[t]hese

numbers are exclusive of lost business income and contents lists that are still being created[.]" *Id.* at 2. LCI then provided documentation to Scottsdale in support of its BI claim on August 26, 2021, along with another demand for policy limits under that claim. Doc. 19, att. 10. Scottsdale disputes that the documentation provided on that date shows a BI claim exceeding policy limits. Doc. 19, att. 2, p. 4.

The case proceeded through the Streamlined Settlement Process outlined in the CMO but did not resolve. Doc. 10. By scheduling order dated January 31, 2022, it was set for jury trial before the undersigned on August 8, 2022. Doc. 11. Scottsdale propounded written discovery on LCI on February 8, 2022, including requests for documentation relating to the BI claim. *See* doc. 19, att. 11. LCI responded in part to these requests on April 3, 2022, and produced additional documentation on May 11, 2022, after Scottsdale filed a Motion to Compel. Doc. 19, atts. 11 & 12; *see* docs. 14 & 17 (motion to compel and reply noting compliance). Scottsdale retained the services of forensic accountant Kenneth Strohecker, who provided a report on LCI's BI losses based on this documentation on May 25, 2022. Doc. 19, att. 14. In this report, issued on May 25, 2022, Strohecker summarized BI losses on a net profit/loss basis viewed from a quarterly average history over time. *Id.* at 5. The report reflects a loss of $338,215.00 as of the third quarter of 2021, with the caveat that the "[p]eriod of restoration for Hurricane Laura and Delta losses have been left to the adjuster's determination." *Id.* at 5. Strohecker also found that LCI's net profits exceeded its quarterly average by $32,558 in the fourth quarter of 2021. *Id.*

Scottsdale states that LCI has not provided its own report or anything to refute these findings. Doc. 19, att. 2, p. 5. Accordingly, it now moves for summary judgment on the

issue that its contractual liability for this claim is capped at the amount outlined in Strohecker's report, reserving for trial any further reduction that may occur once the period of restoration is determined. LCI opposes the motion, arguing that its secretary and treasurer, Keitha Greicar, is familiar with the company's bookkeeping and records and will be able to testify that the company has lost more than $500,000 in business income since the storm as well as over $140,000 in extra expense. Doc. 27.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

Scottsdale argues that Ms. Greicar's declaration is unsupported and that her lay testimony will be insufficient to create a fact issue. The court disagrees and will await LCI's ability to lay a proper foundation for her testimony at trial. Based on her knowledge and experience of the business's operations after the 2020 hurricane season, she may also be able to offer testimony that will rebut the opinions offered by Scottsdale's experts. Accordingly, summary judgment is inappropriate as to this claim.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 19] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers this 1st day of July, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE